UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:14-CR-00012 |
| | ) | |
| ROBERT F. MCDONNELL | ) | JUDGE JAMES R. SPENCER |
| MAUREEN G. MCDONNELL | ) | |

**REPLY OF DEFENDANT ROBERT F. MCDONNELL TO THE GOVERNMENT'S
OPPOSITION TO MOTION # 8 – MOTION FOR BILL OF PARTICULARS**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 2

I.      Mr. McDonnell's Limited Request For Particulars Is Necessary To Prepare His
        Defense And Avoid Unfair Surprise ................................................................................... 2

        A.      The Government Should Specify The Substance Of Each Official Act That
                Mr. McDonnell Allegedly Performed Or Promised To Perform .............................. 2

        B.      The Government Should Disclose The Identities Of Unindicted Co-
                Conspirators ............................................................................................................ 8

II.     The Inadequacy Of The Indictment Cannot Be Cured By Overwhelming Mr.
        McDonnell With Millions Of Documents ......................................................................... 10

CONCLUSION ............................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Evans v. United States*,
504 U.S. 255 (1992)......................................................................................................7, 8

*United States v. Aispuro*,
No. CR 08-2936 JP, 2010 BL 59827 (D.N.M. Mar. 16, 2010) .................................12

*United States v. Anderson*,
254 F. Supp. 177 (W.D. Ark. 1966)..........................................................................9

*United States v. Barrera*,
950 F. Supp. 2d 461 (E.D.N.Y. 2013) .......................................................................8

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987)......................................................................................12

*United States v. Espy*,
989 F. Supp. 17 (D.D.C. 1997) .................................................................3, 4, 5, 6, 7

*United States v. Joseph*,
510 F. Supp. 1001 (E.D. Pa. 1981) ..........................................................................7

*United States v. Loftus*,
992 F.2d 793 (8th Cir. 1993) ....................................................................................3

*United States v. Mahaffy*,
446 F. Supp. 2d 115 (E.D.N.Y. 2006) ......................................................................11

*United States v. Nachamie*,
91 F. Supp. 2d 565 (S.D.N.Y. 2000)........................................................................11

*United States v. Rey*,
923 F.2d 1217 (6th Cir. 1991) ..................................................................................9

*United States v. Sampson*,
448 F. Supp. 2d 692 (E.D. Va. 2006) ...................................................................2, 7, 8

*United States v. Stern*,
No. 03 CR. 81 (MBM), 2003 WL 22743897 (S.D.N.Y. Nov. 20, 2003) .................6

*United States v. Sun-Diamond Growers of Cal.*,
526 U.S. 398 (1999)..................................................................................................3

*United States v. Trie*,
     21 F. Supp. 2d 7 (D.D.C. 1998) ........................................................................................7

*United States v. Vasquez-Ruiz*,
     136 F. Supp. 2d 941 (N.D. Ill. 2001) ..............................................................................11

## INTRODUCTION

There is no question that this case features a "detailed Indictment." (Gov't Br. at 1.) The problem, however, is that while the Indictment is detailed in certain respects, it grows noticeably more vague when it comes to an allegation essential to stating a complete public corruption offense—that Mr. McDonnell promised to perform or did perform an "official act" on behalf of Mr. Williams or Star Scientific, Inc. ("Star"). The Indictment's detail on all other fronts—far from exonerating this deficiency—simply underscores the appropriateness of additional specificity on this critical point and highlights the Government's apparent inability to provide that necessary detail without exposing the lack of a legal basis for its charges. The Government's artfully vague pleading does not "fairly apprise" Mr. McDonnell of the charges against him. It is therefore deficient. The narrow set of particulars the defense has requested is necessary to cure that deficiency.

The same is true for the Government's refusal to tell Mr. McDonnell who it thinks participated in the alleged conspiracy. The Government opposes the production of this critical information, but never explains the reason for its opposition. Unlike many criminal cases, this one lacks any plausible concerns about the safety or security of unindicted co-conspirators. And moreover, the alleged conspiracy in this case is far different from the conspiracies that federal prosecutions typically feature—*i.e.*, conspiracies in which the underlying criminal statute is clear (*e.g.*, drug distribution) and the number of co-conspirators is many (*e.g.*, an international drug cartel), such that identifying those co-conspirators would shed little light on the underlying criminal charges. Here, by contrast, the underlying criminal corruption statutes the Government has invoked are unquestionably vague and the defense does not know what specifically about Mr. McDonnell's conduct the Government actually believes was criminal. Knowing who else

the Government believes was participating in the McDonnells' supposed scheme is therefore essential to "fairly apprise" Mr. McDonnell of the charges against him because that knowledge would provide critical insight into the nature, scope, and aims of the conspiracy. *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) (citation omitted).

The defense asks only that the Government (1) explain what promised or actual conduct it believes was "official" (and thus illegal), and (2) identify the individual members of the alleged conspiracy. These modest requests are hardly the "demand to provide a detailed disclosure of the government's evidence in advance of trial" that the Government dramatically claims. (Gov't Br. at 13 (citation omitted).) And despite opposing disclosure, the Government never provides any reason for withholding these basic details other than its reflexive protestation that revealing *any* information—no matter how limited—will somehow unveil its entire legal strategy. The Government's inability to articulate any compelling prejudice confirms, of course, that no good reason exists.

Mr. McDonnell needs this information to prepare his defense and avoid unfair surprise. The Government has no legitimate basis for withholding it. The Court should thus grant Mr. McDonnell's motion for a bill of particulars.

## ARGUMENT

I.     **Mr. McDonnell's Limited Request For Particulars Is Necessary To Prepare His Defense And Avoid Unfair Surprise.**

A.     **The Government Should Specify The Substance Of Each Official Act That Mr. McDonnell Allegedly Performed Or Promised To Perform.**

1.     To "fairly apprise" Mr. McDonnell of the charges against him, *see United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) (citation omitted), the Government must identify each official act that Mr. McDonnell allegedly performed or promised to perform as well as the *substance* of those acts—*i.e.*, the features of the acts that make them "official" for

- 2 -

purposes of criminal liability under the federal bribery laws.  Not every action a public official takes is an official act.  The Supreme Court has made clear that actions equivalent to "receiving . . . sports teams at the White House, visiting [a] high school, and speaking to . . . farmers about USDA policy"—which "are assuredly 'official acts' in some sense"—are not official acts under the federal bribery laws.  *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 407 (1999).  The same is true when a public official merely arranges a meeting for a constituent with another official.  *See United States v. Loftus*, 992 F.2d 793, 796 (8th Cir. 1993) (no Hobbs Act liability where an official "promised only to introduce the [constituent] to influential persons" but "did not promise to use his official position to influence those persons").  An action is not "official" unless it is undertaken to exercise governmental power or to influence others in exercising such power.

If the Government does not disclose the essential details of the official acts it alleges, then neither the defendant nor the court can determine whether the Government has alleged an actual federal crime.  Not only would this prevent the accused from understanding the charges against him, it would make it impossible for Mr. McDonnell to prepare an effective defense and avoid unfair surprise.  It would also—if left unremedied—free the Government to always allege facts at a high level generality, plead around a critical element of the charged offense, and then leave the defendant to guess blindly at the countless possible permutations of what the Government believes will satisfy that critical element of the crime.  The need to avoid that obvious unfairness is, of course, precisely why the *Espy* court directed the Government to specify "the conduct, date, place *and substance* of *each* official act referred in the indictment." *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997) (emphasis added).

**2.**     The Government attempts to distinguish *Espy*, but that effort fails.  First of all, the Government's claim that the *Espy* indictment "was completely silent regarding even the *type* or *category* of contemplated official acts" is false.  (Gov't Br. at 5.)  The *Espy* indictment alleged, for instance, that then-Secretary of Agriculture Mike Espy accepted gratuities "from corporations and individuals seeking official action by, doing or seeking to do business with, and conducting activities regulated by the USDA."  (Indictment ¶ 7, *United States v. Espy*, No. 97-0335 (D.D.C. Aug. 27, 1997) (Gov't Br. Ex. A).)  That allegation thus conveyed that these corporations and individuals sought favorable treatment at least with respect to contract awards—a straightforward "official" act under federal law.  Here, by contrast, the Government never articulates—not once in 43 pages of an otherwise "detailed Indictment" (Gov't Br. at 1)— precisely what governmental action or actions it thinks Mr. McDonnell was trying to achieve or influence in the course of his supposed scheme.

The Indictment does make vague accusations that Mr. McDonnell promised or performed official acts to "legitimize, promote, and obtain research studies" for Star products.  (*See* Indictment ¶ 22.)  In its general description of the alleged official acts, for example, the Indictment alleges that Mr. McDonnell arranged meetings "to discuss and promote Anatabloc®," attended and hosted events at the Mansion "designed to encourage" research studies and "to promote" Star products, contacted other officials "as part of an effort to encourage" research studies, and "facilitat[ed] [Star's] relationships with Virginia government officials."  (*See id.* ¶ 111(c).)  The Government claims that the Indictment provides "significant evidentiary detail" to support these allegations (*see* Gov't Br. at 4), but that supposed "detail" sheds no more light on why the Government believes that Mr. McDonnell's alleged conduct constituted "official" action than the Indictment's broad characterizations of that conduct.  For instance, the Indictment

- 4 -

alleges that Mr. McDonnell "sent an email to the Virginia Secretary of Health" stating that he "'would like to have [one of the Secretary of Health's Deputies] attend a short briefing at the mansion about 10am with first lady on the Star Scientific anatablock [sic] trials planned in va at vcu and uva.'"   (Indictment ¶ 48.)   This allegation says nothing about how this interaction involved Mr. McDonnell "promoting" or "legitimizing" Star's products, nor does it describe how, if at all, Mr. McDonnell sought to influence the Secretary (his direct subordinate) to take any particular governmental action on behalf of Mr. Williams or Star.

Similarly, the Indictment alleges that Mr. McDonnell "hosted" an event at the Governor's Mansion "for the launch of Star Scientific's Anatabloc® product" and that he "spoke favorably to the attendees regarding further study of anatabine."  (*Id.* ¶ 60.)  But again, these allegations do not explain, much less describe, how Mr. McDonnell influenced or attempted to influence any particular governmental action.  The same is true for the Government's allegations that Mr. McDonnell sent a ten-word email to his Chief Counsel saying "'Pls see me about anatabloc issues at VCU and UVA'" (*id.* ¶ 80), that he attended a health care leaders reception at which Star representatives and Virginia university researchers were present (*id.* ¶ 84), and that he asked a member of his cabinet to "reach out to the 'Anatabloc people' and meet with them to discuss Anatabloc®" (*id.* ¶ 88).  Not one of these allegations (or any other allegation in the Indictment) supplies any factual basis for concluding that Mr. McDonnell attempted to exercise the sovereign power of Virginia's government on behalf of Mr. Williams or Star, nor do they supply any factual basis to conclude that Mr. McDonnell asked or pressured anyone else to do so.

In any event, whether the Government's indictment against Mr. McDonnell is more or less detailed than the *Espy* indictment is irrelevant.  What is most significant about the *Espy* decision is the relief that it ordered.  The court did not order the Government to simply identify

the general type or category of official acts.  Rather, the court ordered the Government to specify the "conduct, date, place and substance of *each* official act referred in the indictment."  *Espy*, 989 F. Supp. at 34 (emphasis added).  We request that this Court do the same.

3.          The Government also seeks to evade *Espy* by claiming that the relief granted there—which is all that Mr. McDonnell seeks here—is akin to requesting particulars enumerating every overt act taken in furtherance of a conspiracy.  (*See* Gov't Br. at 4-5.)  But that is the wrong analogy.  Overt acts in furtherance of conspiracies are nothing like the "official" act that supplies an essential element to any bribery charge.  The "overt act" concept is well-established, has a clear legal meaning, and is easily comprehended from simple allegations or discovery.  An "official" act, by contrast, is a legal concept that turns on fine-grained distinctions not easily discernible from vague allegations like those that the Government has offered here.  Since it is difficult to ascertain the Government's legal understanding of "official" act, it is critical that the Government explain the "conduct, date, place and substance of *each* official act referred in the indictment," *Espy*, 989 F. Supp. at 34 (emphasis added), and that it intends to prove at trial.  Otherwise, the Government could unfairly surprise the defense at trial by suddenly claiming that innocuous conduct that the Government did not initially allege as an "official act" is "official" after all.  *See, e.g.*, *United States v. Stern*, No. 03 CR. 81 (MBM), 2003 WL 22743897, at *4 (S.D.N.Y. Nov. 20, 2003) ("[The accused] should not be forced to speculate that the government may have some other wrongful act in mind that it intends to spring upon him at trial, and possibly to make him the victim of unfair surprise.").

4.          The far better analogy, moreover, is to requests for particulars in cases alleging fraud.  Just like bribery, liability for fraud often turns on nuanced legal and factual distinctions.  If the Government does not apprise the accused of the exact nature of its alleged fraud, then the

accused cannot understand the charges against him and thus cannot adequately prepare a defense. That is why "[i]n the case of fraud and perjury, it is critical that the government identify in the indictment the dates of the fraudulent conduct, the specific fraudulent documents, and the fraudulent statements within the documents," *Sampson*, 448 F. Supp. at 696; in other words, the fraud-charges equivalent to the "conduct, date, place and substance of each official act." *Espy*, 989 F. Supp. at 34. As this Court explained in *Sampson*, particulars are necessary in a fraud case "to inform the Defendant of the specific allegations" whenever the indictment "fail[s] to state which specific documents were fraudulent, and what was allegedly fraudulent about the documents at issue." 448 F. Supp. at 696. So too here. To adequately apprise the accused of its bribery charges, the Government must specify the alleged official acts and articulate what made those acts official. *See also, e.g.*, *United States v. Trie*, 21 F. Supp. 2d 7, 21-22 (D.D.C. 1998) (explaining in the false statements context that "[t]he government must provide information as to exactly what the false statements are, what about them is false, who made them, and how Mr. Trie caused them to be made" (citing cases)).

5.    Finally, the Government ultimately retreats into the extreme position that it does not have to apprise Mr. McDonnell of any official acts *at all*. (*See* Gov't Br. at 6-7.) Citing *United States v. Joseph*, 510 F. Supp. 1001 (E.D. Pa. 1981)—a three-decades-old decision that is irreconcilable with *Espy*—the Government contends that it need not plead the substance of any official acts because it "is not required to prove that *any* official acts were actually performed." (Gov't Br. at 6.) This argument is mistaken. To be sure, an official act need not be *performed* to constitute an offense, *see Evans v. United States*, 504 U.S. 255, 268 (1992), but an official act still has to be *promised*. Otherwise, the Government could bring bribery charges on the basis of no more than accepting a lawful gift or a permissible campaign contribution. And because an

- 7 -

official act—whether promised or performed—is an essential element of a federal corruption charge, the Government must allege that fact with the same level of specificity as any other essential element of a charged crime. *See, e.g.*, *id.* (holding that "the offense is completed at the time when the public official receives a payment in return for his agreement to perform *specific* official acts" (emphasis added)).

The Government's view—that it can charge public officials with corruption without even bothering to tell them what official acts it believes those officials took or promised—would enable the Government to file bribery charges that specify no more than "Official X corruptly promised to take official actions on Citizen Y's behalf in exchange for a $250 campaign donation." That would certainly make it easier for the Government to indict public officials, but it would fly in the face of the accused's established right to be "fairly apprise[d] . . . of the charges against him so that he may adequately prepare a defense and avoid surprise at trial." *Sampson*, 448 F. Supp. 2d at 696 (citation omitted).

*    *    *

The Court should therefore order the Government to disclose the substance of each promised or performed official act that the Government intends to prove, as requested in Mr. McDonnell's motion for a bill of particulars.

### B.     The Government Should Disclose The Identities Of Unindicted Co-Conspirators.

The Court should also order the Government to confidentially disclose the identities of the unindicted co-conspirators referenced in the Indictment. It is telling that the Government does not contend that disclosure would prejudice it (or anyone else). That is significant because disclosure of unindicted co-conspirators is typically ordered in cases where—like this one—there is no threat of danger to those alleged co-conspirators. *See United States v. Barrera*, 950 F.

- 8 -

Supp. 2d 461, 477 (E.D.N.Y. 2013).

The Government resists that commonsense practice, but its only rationale is its claim that "'it is not essential that a conspirator know all other conspirators.'" (Gov't Br. at 8 (quoting *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991)).) That is because, the Government reasons, the "defendant may be indicted and convicted despite the names of his or her co-conspirators remaining unknown." (*Id.*) But that ignores the reality that disclosure of unindicted co-conspirators—just like disclosure of other allegations that are not strictly essential to a conviction—is frequently ordered when it is necessary for the defendant to adequately prepare a defense and avoid unfair surprise. (*See* R. McDonnell Br. at 8-9 (citing cases).)[1]

Disclosure might be unnecessary in a case where the underlying crime is clear, or where the conspiracy is massive, such that identifying individual conspirators sheds no light on the Government's factual allegations. But the conspiracy alleged here is small and intimate—indeed, its only unnamed member may be Mr. Williams—and turns upon underlying criminal statutes that are indisputably broad. Knowing who the Government believes participated in the alleged conspiracy is therefore critical to understanding the Government's conspiracy charge (in particular its scope, manner, and aims) and the Government's corruption charges generally.

At bottom, it is a bedrock principle of criminal justice that the accused "is presumed to be innocent" and is thus "*ignorant of the facts* on which the [Government] founds his charges." *United States v. Anderson*, 254 F. Supp. 177, 181 (W.D. Ark. 1966) (emphasis added) (citation omitted). Because Mr. McDonnell is presumed innocent and thus ignorant of the facts, he does not know what the Government believes he did or who the Government believes he did it with.

---

[1] Perhaps because it cannot overcome their reasoning, the Government dismisses these cases on the ground that they come from "outside of the Fourth Circuit." (Gov't Br. at 7.) That is no answer to their persuasiveness, of course. It is also an ill-placed criticism given that the Government relies on non-Fourth Circuit cases throughout its Opposition.

Given that presumed ignorance—and the absence of any countervailing governmental interests—the Court should order the Government to confidentially identify the alleged unindicted co-conspirators.[2]

## II. The Inadequacy Of The Indictment Cannot Be Cured By Overwhelming Mr. McDonnell With Millions Of Documents.

The Government cannot overcome the deficiencies in its Indictment by flooding Mr. McDonnell with five million pages of (late-produced) documents, however "easily searchable" the Government believes that avalanche of information to be. (Gov't Br. at 1.) Mr. McDonnell is not asking the Government to divulge every nook and cranny of its case. He is simply asking the Government to articulate the substance of each official act that it believes he promised or performed with a level of detail similar to its other allegations and to confidentially disclose the identities of his alleged co-conspirators. Inundating Mr. McDonnell with documents will not aid his understanding of the Government's official act allegations or make clear who the Government believes his co-conspirators were in the alleged ill-defined crime. For example, no amount of discovery will reveal what precisely the Government means when it alleges that Mr. McDonnell "legitimized" and "promoted" Star's products. These terms potentially encompass a broad range of innocuous actions that Mr. McDonnell and his staff took. Without further factual

---

[2] The Government brushes aside the defense's argument that withholding the identities of the alleged co-conspirators will impede Mr. McDonnell's ability to prepare an adequate defense because the Government's broad accusations may have caused potential witnesses to avoid speaking with defense counsel out of concern that the Government thinks *they* are unindicted co-conspirators. (*See* Gov't Br. at 8-9.) The Government claims to remove this problem by assuring potential witnesses that they will not be investigated "simply because they choose to meet with defense counsel." (*Id.* at 8.) But that plainly misses the point. The concern is not that witnesses will be investigated simply for meeting with defense counsel; rather, the concern is that they will be investigated *at all*. So long as witnesses fear that they are potential unindicted co-conspirators and thus subject to possible criminal liability, those witnesses have every incentive not to speak about the matter at all with defense counsel. Disclosing the identities of the unindicted co-conspirators would eliminate that potential concern—at least for those not in the line of fire.

explanation of the Government's allegations, Mr. McDonnell will be left guessing about which actions fall within the Government's vague description of official acts and which do not. The production of millions of raw documents will not cure that fundamental defect in the Indictment.

Regardless, Mr. McDonnell should not have to spend months flipping through millions of documents or crafting elaborate Boolean searches to unearth the relevant documents. While discovery can certainly obviate the need for a bill of particulars in some cases, it does not do so where, as here, that discovery would fill a warehouse in its physical form. "[W]here discovery is overwhelmingly extensive and the government fails to designate which documents it intends to introduce and which documents are merely relevant to the defense," the Government has an obligation to provide the particulars necessary to understand the inadequate allegations in the Indictment. *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006) (emphasis omitted); *see also, e.g.*, *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001) ("The defense should not be left to its own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations, which have not yet been disclosed."); R. McDonnell Br. at 10-11 (citing cases).

The Government attempts to distinguish the many cases noting that voluminous discovery cannot cure the need for particulars by claiming that those cases involved (1) indictments that were insufficiently detailed or (2) litigation that was more complex and wide-ranging than Mr. McDonnell's case. (*See* Gov't Br. at 12-13.) The first point is no response at all, of course, because the Indictment here is likewise insufficiently detailed. As for the second point, it is simply untrue that those cases were materially more extensive in terms of their complexity and the volume of discovery. *See, e.g.*, *United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (case involved eight defendants, an unknown number of unindicted

- 11 -

co-conspirators, a three-year conspiracy, and more than 200,000 pages); *United States v. Bortnovsky*, 820 F.2d 572, 573, 575 (2d Cir. 1987) (case involved three defendants, a 12-count indictment, and "mountains of documents"); *United States v. Aispuro*, No. CR 08-2936 JP, 2010 BL 59827, at *1, *7 (D.N.M. Mar. 16, 2010) (case involved eight defendants, a six-month drug conspiracy, and approximately 16,000 pages of documents, albeit "unorganized").  This case involves two defendants, an unknown number of unindicted co-conspirators, a 14-count indictment alleging complex and ill-defined corruption charges, and approximately five million pages of documents.  It is clearly analogous to the many cases in which courts have granted a bill of particulars notwithstanding the extensive discovery the Government produced.[3]

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. McDonnell's motion for a limited bill of particulars and order the disclosure of the information requested therein, or in the alternative, order the Government to identify the relevant documents within its five-million-page production that will provide sufficient detail both to understand the Government's official act allegations and to identify all unindicted co-conspirators.

---

[3] The Government claims that the defense has "more than a sufficient understanding of the evidence and allegations" in this case, and cites as proof of that assertion that defense counsel identified 121 individuals with information relevant to the case and that 70 of those individuals were later identified by the Government as prospective witnesses. (*See* Gov't Br. at 11 n.5.)  But this only shows that the defense knows who worked in the Governor's Office, cabinet positions, and the like—all of whom are potential witnesses—and has some idea of who the Government summoned to the grand jury.  It does not somehow prove that the defense understands the Government's vague allegations, nor does it show that the defense knows who the alleged unindicted co-conspirators are.  Indeed, if the defense fully understood the Government's allegations, its potential witness list would have been much smaller.  The existence of well over 100 potential witnesses *does*, however, confirm the need for particulars that will enable the defense to focus on the evidence that actually matters as it prepares for the looming trial.

Dated: March 13, 2014                           Respectfully submitted,


                                                /s/ John L. Brownlee
                                                John L. Brownlee (VSB No. 37358)
                                                Timothy J. Taylor (VSB No. 84529)
                                                Holland & Knight LLP
                                                800 17th Street, N.W., Suite 1100
                                                Washington, DC 20006
                                                Telephone: (202) 828-1854
                                                Facsimile: (202) 955-5564
                                                Email: john.brownlee@hklaw.com

                                                Henry W. Asbill (*pro hac vice*)
                                                Ryan D. Newman (*pro hac vice*)
                                                James M. Burnham (*pro hac vice*)
                                                Jones Day
                                                51 Louisiana Avenue, N.W.
                                                Washington, DC 20001
                                                Telephone: (202) 879-3939
                                                Facsimile: (202) 626-1700
                                                Email: hasbill@jonesday.com

                                                *Counsel for Governor Robert F. McDonnell*

- 13 -

## <u>CERTIFICATE OF SERVICE</u>

I, John L. Brownlee, am a member of the Bar of this Court. I hereby certify that on this 13th day of March, 2014, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, causing it to be served on all registered users.

Dated:  March 13, 2014

Respectfully submitted,


/s/ John L. Brownlee
John L. Brownlee (VSB No. 37358)
Holland & Knight LLP
800 17th Street, N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 828-1854
Facsimile: (202) 955-5564
Email: john.brownlee@hklaw.com

*Counsel for Governor Robert F. McDonnell*